# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWNDA LYN B.,[1] <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 5:18-cv-00298-AFM <br><br> **MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying her application for disability insurance benefits. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

Plaintiff applied for disability insurance benefits, alleging disability beginning March 3, 2014. Her application was denied initially and on reconsideration.

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

(Administrative Record ["AR"] 80-111.) A hearing took place on May 17, 2016 before an Administrative Law Judge ("ALJ"). Plaintiff (who was represented by counsel) and a vocational expert ("VE") testified at the hearing. (AR 48-79.)

In a decision dated August 8, 2016, the ALJ found that Plaintiff suffered from the following severe impairments: irritable bowel syndrome, mitral valve prolapse, osteoarthritis of the left ankle, right knee degenerative joint disease, right lateral epicondylitis, degenerative disk disease, anxiety, depression, and migraine headaches. (AR 22.) The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light exertional work with the following mental restrictions: Plaintiff is limited to performing simple, repetitive, and routine tasks, making simple work decisions, and only occasional interaction with the public and coworkers. (AR 25.) Relying upon the testimony of the VE, the ALJ found that Plaintiff was capable of performing work existing in significant numbers in the national economy. (AR 32.) Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 33.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 2-7), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUES

1. Whether the ALJ properly evaluated the opinion of the consultative clinical psychologist, William Weiss, Ph.D.

2. Whether the ALJ erred in relying on the testimony of the VE.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d

1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

**1. The ALJ's evaluation of Dr. Weiss's opinion.**

**a. Relevant Evidence.**[2]

Plaintiff's Treatment at Kaiser Permanente

On May 20, 2014, Plaintiff saw Jeffrey Ford, M.D., for complaints of epigastric pain. During the office visit, Plaintiff also complained of anxiety, which she attributed to stressors related to her job. Dr. Ford recommended that Plaintiff increase her antidepressant medication fluoxetine (Prozac). Plaintiff declined, preferring to see her primary care physician. (AR 588-589.) The following day, Plaintiff saw Mary Ann Browning, N.P., complaining of stress. N.P. Browning diagnosed Plaintiff with anxiety disorder. Treatment notes indicate that Plaintiff experienced "anxiety related to workman's comp issues." Plaintiff reported that fluoxetine had been helping her, but her stress level increased due to work issues. (AR 591.) N.P. Browning increased the dosage of Prozac and recommended that when Plaintiff's work-related issues improved, she taper the medication. (AR 592.)

At a follow up appointment in June 2014, N.P. Browning diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood. Treatment notes indicate that Plaintiff was experiencing stress related to her "work situation." The

---

[2] Plaintiff does not contest the ALJ's findings regarding her physical impairments. Thus, the Court's discussion of the record focuses on the medical evidence relevant to Plaintiff's mental impairments.

3

treatment plan consisted of: "off work for now due to stress. Return to clinic in July for reevaluation." (AR 596.)

In July 2014, Plaintiff informed N.P. Browning that she was interested in trying the medications Lorazepam (Ativan) and Trazadone because her sister had reported relief from her own anxiety. (AR 1048.) Plaintiff also expressed a desire to discontinue Prozac. N.P. Browning prescribed Lorazepam and Trazodone. (AR 1049-1050.)

Notes from an August 2014 office visit for a medication review indicate that Plaintiff was weaning herself off of Prozac and it was "going well." Plaintiff reported that Trazadone and Lorazepam were helping. Plaintiff's Prozac dosage was decreased. (AR 602-603.) During a subsequent follow up visit with N.P. Browning, Plaintiff reported that Xanax (Alprazolam) worked better than Ativan. (AR 1058.)

Plaintiff saw N.P. Browning again in September 2014. Based upon Plaintiff's complaints of abdominal pain, N.P. Browning ordered a CT scan. N.P. Browning also referred Plaintiff for mental health psychotherapy for stress anxiety. (AR 611-612.) It does not appear that Plaintiff ever obtained psychotherapy.

In October 2014, Plaintiff obtained a refill for her Xanax prescription. (AR 1073.) In her November 2014 follow up, Plaintiff reported difficulties sleeping. She told N.P. Browning that Trazadone did not help, but Ambien did help. She was prescribed Ambien for sleep and Cymbalta for anxiety, depression, and fibromyalgia. (AR 1077.)

At a follow-up appointment in January 2015, Plaintiff complained of headaches. She did not mention depression, anxiety, or other mental impairments. Her medications were refilled. (AR 1089-1094.)

N.P. Browning completed a mental capacity assessment in September 2014. She opined that Plaintiff had no limitations in the following areas of functioning: the ability to remember locations and work-like procedures; the ability to understand and remember short and simple instructions; the ability to understand and remember

detailed instructions; the ability to carry out short and simple instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or in proximity to others; the ability to make simple work-related decisions. (AR 1270-1271.) N.P. Browning opined that Plaintiff had slight limitations in the following areas of functioning: the ability to complete a normal workday without interruptions from psychologically based symptoms; the ability to complete a normal workweek without interruptions from psychologically based symptoms; and the ability to perform at a consistent pace with a standard number and length of rest periods. She attributed these slight limitations to Plaintiff's fatigue and depression. (AR 1271.) Last, N.P. Browning opined that Plaintiff's mental condition imposed no limitations on Plaintiff's capacity for social interaction or adapting to work environment. (AR 1271-1272.)

<u>Dr. Weiss</u>

Clinical psychologist William Weiss, Ph.D., performed a psychological diagnostic evaluation of Plaintiff in June 2014. Dr. Weiss summarized Plaintiff's subjective complaints regarding depression and anxiety. In particular, he noted that Plaintiff stated she has depression and low energy, and is irritable. When she spoke about her depression, Plaintiff began to cry. She told Dr. Weiss that she had thought of suicide two years earlier, but she did not think she would ever act upon it. Plaintiff claimed to have post-traumatic stress disorder, although she had never received such a diagnosis. She told Dr. Weiss that she felt "pretty anxious all the time." (AR 564.)

At the time of Dr. Weiss's evaluation, Plaintiff was taking Prozac for her psychological problems and Ambien for sleep, in addition to pain medication. Plaintiff stated that she had once obtained mental health counseling when she got her second divorce, but she was not currently in counseling. He noted that Plaintiff drove

to the interview and she was cooperative. (AR 565-566.)

Dr. Weiss set out Plaintiff's function report in detail,[3] noting that Plaintiff claimed she was not able "to do anything," including hobbies or interests; not able to pay attention for longer than five minutes; not able to follow spoken instructions; and does not finish what she started. (AR 566.) He also reviewed an undated report from Kaiser Permanente which lists anxiety among Plaintiff's diagnoses and indicated Plaintiff took escitalopram and sertraline for depression. (AR 566.)

Dr. Weiss performed a mental status examination, which revealed the following: Plaintiff's proverb interpretation was very good; her abstract thinking was adequate; her remote memory was very good; her information was very good; and she was oriented times three. (AR 567-568.) Plaintiff was able to obtain four digits forward but only three digits backward. She could not remember three objects after five minutes. It appears that she was able to recall a news event from the day before and the route to Dr. Weiss's office. Dr. Weiss concluded that Plaintiff's recent memory was "less than adequate." (AR 567.) Plaintiff was able to calculate 3+4=7, but unable to multiply 7 x 9 or subtract 17 cents from a dollar. Similarly, she could not count backward by 7's or by 3's. Thus, Dr. Weiss concluded that Plaintiff's calculations and serial sevens were impaired. (AR 567.) In evaluating Plaintiff's judgment and insight, Dr. Weiss asked what Plaintiff would do if she discovered fire in a theatre. Plaintiff answered "Run." He asked what she would do if she lost a library book, and she answered "Cry – take it back, I don't know." When asked what she would do if she found a stamped addressed envelope on the sidewalk, she responded that she would "Put it in the mailbox." Dr. Weiss concluded that Plaintiff's judgment was impaired. (AR 568.)

---

[3] The bulk of Dr. Weiss's report consists of recitation of Plaintiff's statements regarding her symptoms. (*See* AR 564-566, 568-570.)

According to Dr. Weiss's report, Plaintiff showed facies and tears indicative of depression. Her speech was clear and intelligible, but she had "problems with logic." (AR 568.)

Dr. Weiss noted that Plaintiff lived with her husband and described a typical day as involved rising at 6 a.m., doing some cooking, washing the dishes, and doing the laundry. She told Dr. Weiss that she still liked to dance when she went out with her husband, but that her marriage was not "going well." She attributed her marital problems to lack of communication which resulted from "her boss creating a hostile work environment, which has upset her." (AR 569.) Plaintiff also had two close friends who she saw every three weeks to two months. She went to bed between 8 and 9 p.m. (AR 569.)

Dr. Weiss diagnosed Plaintiff with major depressive disorder, recurrent, moderate and generalized anxiety disorder, with panic attacks. (AR 569.) Under the heading "Prognosis," Dr. Weiss highlighted some of Plaintiff's physical complaints, including her inability to remain on her feet too long as well as neck and back pain, and then remarked, "[w]hile [Plaintiff] reported a number of physical problems as reasons why she could not work, she also talked about psychological issues related to focusing and being able to stay awake." (AR 570.) Dr. Weiss opined that, although Plaintiff took medication, she needed "more intensive mental health treatment," including a reevaluation of her medication and the addition of psychotherapy. In Dr. Weiss's opinion, Plaintiff

> needs to explore the reasons why her depression has become a significant problem and why she is anxious all the time. These are important problems which interfere with her ability to work. Of course, her physical limitations will also have to be assessed in evaluating her capacity to return to work. At the present time, she would not be able to maintain gainful employment.

(AR 570.) Under the heading "Medical Source Statement," Dr. Weiss repeated that

Plaintiff had not received adequate treatment for her depression and anxiety and "she should seek it, particularly psychotherapy." At the same time, he opined that "the long term nature of these problems tends to suggest that she would not be able to return to work in the future." (AR 570.)

State Agency physicians

State Agency physicians Patricia Kraft, Ph.D., and Michael Regets, Ph.D., reached the same conclusions about the functional limitations caused by Plaintiff's mental impairment. Specifically, both opined that Plaintiff was not significantly limited in her ability to understand, remember, and carry out short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; to make simple work-related decisions; ask simple questions or request assistance; and maintain socially appropriate behavior. (AR 91-92, 107-109.) Both opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions for psychological symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting. (AR 91-92, 106-109.) Both physicians determined that Plaintiff retained the ability to perform simple work within her physical limitations and would work best with limited contact with others. (AR 92, 107.)

Dr. Reget acknowledged that the opinion of the consultative examiner, Dr. Weiss, was more restrictive than his own opinion. According to Dr. Reget, Dr. Weiss relied heavily on the subjective report of symptoms and limitations

provided by Plaintiff, but the totality of the evidence did not support Dr. Weiss's opinion. (AR 109.)

Plaintiff's Testimony

At the hearing, the ALJ noted that the record contained evidence of anxiety and depression and asked Plaintiff if she still suffered from those conditions. Plaintiff answered, "Yeah, I get anxiety." (AR 63.) She elaborated that she was a "nervous person" and she could not relax; her body was "just always tense." (AR 63-64.) Plaintiff said that she took Xanax for her anxiety. The ALJ asked if she took it throughout the day or only when the anxiety surfaced, and Plaintiff responded, "I should take it every day, but I don't. I don't take it like [the doctor] asks me to, so that would probably help if I did." (AR 64.) She explained that she was concerned about taking Xanax because her doctor told her that she could become addicted to it if she used it regularly. (AR 69.)

**b. The ALJ's Decision.**

In assessing Plaintiff's RFC, the ALJ discussed the medical record and opinions. The ALJ assigned significant weight to N.P. Browning's mental health assessment, finding it consistent with Plaintiff's activities and the limited mental health treatment records. (AR 29.) The ALJ gave little weigh to Dr. Weiss's opinion. The ALJ noted that Dr. Weiss's opinion failed to account for Plaintiff's lack of treatment. Further, the ALJ considered Dr. Weiss's opinion that Plaintiff would not be able to work in the future whether or not she obtained treatment to be speculative. The ALJ also found it significant that Dr. Weiss based his conclusion upon the deficits in Plaintiff's mental status examination while ignoring Plaintiff's normal performance on proverbs, abstraction, remote memory, information, and orientation. (AR 30.) In addition, the ALJ pointed out that Dr. Weiss based his opinion about Plaintiff's social limitations based upon marital arguments, yet Plaintiff indicated that she went dancing with her husband when they were not arguing and she interacted with two close friends. The ALJ found that much of Dr. Weiss's opinion appeared to

be based on speculation. The ALJ contrasted Dr. Weiss's opinion with the opinion of N.P. Browning. (AR 30-31.)

The ALJ also gave significant weight to the opinion of State agency physician Dr. Regets, who restricted Plaintiff to simple work and limited contact with others. The ALJ found that opinion to be consistent with Plaintiff's activities, N.P. Browning's assessment, and the objective findings from Dr. Weiss's examination. Accordingly, the ALJ adopted those restrictions in formulating Plaintiff's RFC. (AR 31.)

### c. Analysis.

The RFC is the most a claimant can still do despite his or her limitations. *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996) (citing 20 C.F.R. § 404.1545(a)). In determining a claimant's RFC, an ALJ must consider all relevant evidence of record, including medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see* 20 C.F.R. § 404.1527(b). Before rejecting the uncontradicted opinion of a treating or examining physician, an ALJ must provide clear and convincing reasons for doing so. *Hill v. Astrue*, 698 F.3d 1153, 1159-1160 (9th Cir. 2012); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Hill*, 698 F.3d at 1160 (quoting *Regennitter v. Comm'r of the Soc. Sec. Admin.*, 166 F.3d 1294, 1298-1299 (9th Cir. 1999)). An ALJ meets the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citations and internal quotation marks omitted). Because Dr. Weiss's opinion was contradicted by the opinions of the State agency physicians, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence before rejecting it.

The Commissioner identifies five reasons the ALJ provided for rejecting Dr. Weiss's opinion: (1) Dr. Weiss's opinion failed to account for Plaintiff's lack of adequate mental health treatment, and therefore, his opinion was speculative. (2) Dr. Weiss's opinion was inconsistent with his own findings and examination. (3) Dr. Weiss's opinion was inconsistent with Plaintiff's reported daily activities. (4) Dr. Weiss's opinion was inconsistent with the evidence in the record which showed she did not have social limitations. (5) Dr. Weiss's opinion was inconsistent with N.P. Browning's assessment, which was in turn, consistent with the record. (ECF No. 26 at 6-9.) The Court concludes that at least two of the foregoing constitute specific and legitimate reasons for the ALJ's decision – namely, that Dr. Weiss's opinion was unsupported by his own findings and inconsistent with the record as a whole. *See Tommasetti*, 533 F.3d at 1041 (inconsistency with objective medical evidence); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (lack of support by clinical findings).[4]

In considering Dr. Weiss's opinion, the ALJ noted his clinical findings – that Plaintiff exhibited deficiencies in calculations, serial sevens, and insight, and her recent memory was "less than adequate" – but observed that Dr. Weiss failed to address his findings that Plaintiff's mental functioning in other areas was either very good or adequate. (AR 30.) The ALJ pointed out that Dr. Weiss's opinion was inconsistent with the mental health assessment from N.P. Browning. (AR 31.) In particular, the ALJ found it significant that N.P. Browning, who had treated Plaintiff

---

[4] In discussing Dr. Weiss's opinion, the ALJ does not explicitly use the words "unsupported by his clinical findings." Nonetheless, an ALJ is not required to "recite [any] magic words" to justify rejecting evidence, provided the ALJ's grounds for doing so can reasonably be inferred from his or her decision. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir.1989) ("[O]ur cases do require such an incantation. As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the [ALJ's decision], and draw inferences relevant to [the rejected evidence], if those inferences are there to be drawn."). Furthermore, the Commissioner identifies this as a reason provided by the ALJ (*see* ECF No. 26 at 6-7), and Plaintiff does not dispute this reading of the ALJ's decision. Rather, in her Reply, Plaintiff argues that the ALJ erred by relying on such a reason because he essentially substituted his own lay opinion. (ECF No. 27 at 2-3.)

since 2010,[5] assessed no more than slight limitation in every aspect of Plaintiff's mental function. The ALJ found that N.P. Browning's opinions were consistent with the record. (AR 31, *see* AR 1270-1272.)

Substantial evidence supports the ALJ's conclusion that Dr. Weiss's opinion was unsupported by his own findings and by the record as a whole. Dr. Weiss's report contains the aforementioned mental status examination findings indicating that Plaintiff was somewhat impaired in several areas of mental but not impaired in others. At least in the absence of further explanation by Dr. Weiss, it was reasonable for the ALJ to conclude that Dr. Weiss's findings that Plaintiff exhibited deficiencies in calculation, serial sevens, recent memory and insight did not support his conclusion that she was rendered unable to perform all work activity. Furthermore, the ALJ found it significant that Dr. Weiss's opinion directly contradicted the opinion of N.P. Browning, who had treated Plaintiff's mental condition for several years. N.P. Browning's opinion that Plaintiff's mental impairment did not result in significant functional restrictions was consistent with the entire record. As set forth in detail above, Plaintiff's mental health treatment was minimal. No treating physician opined that Plaintiff's mental impairment imposed any significant functional limitations. Nothing in the record supports Dr. Weiss's opinion that Plaintiff was disabled by depression or anxiety. In addition, although Dr. Weiss emphasized that Plaintiff had never obtained adequate mental health treatment and recommended both reevaluation of her medication and psychotherapy, he also opined that Plaintiff would be unable to work even if she obtained appropriate mental health care. The ALJ reasonably concluded that Dr. Weiss's opinion that Plaintiff would be unable to work notwithstanding appropriate treatment to be speculative.

Where, as here, the ALJ's interpretation of the medical evidence and the record is reasonable, the Court will not engage in second-guessing. *See Rollins v.*

---

[5] According to N.P. Browning, she began treating Plaintiff for anxiety in January 2011. (AR 638.)

12

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (even when evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record). In sum, the ALJ did not err by rejecting Dr. Weiss's opinion as unsupported by both objective findings by the record as a whole. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see e.g.*, *Timmons v. Comm'r of Soc. Sec.*, 546 F. Supp. 2d 778, 793 (E.D. Cal. 2008) (objective findings that plaintiff was well-groomed, her speech was clear, her thought processes were logical and goal-oriented and her intellectual functioning was good "certainly contradict [physician]'s opinion that plaintiff could not perform full-time work"); *see also Coaty v. Colvin*, 673 F. App'x 787, 787-788 (9th Cir. 2017) (ALJ properly rejected treating physician's medical opinion because it was "speculative" as well as inconsistent with activities of daily living).[6]

Plaintiff disagrees with the characterization of Dr. Weiss's opinion as speculative and lacking in objective support. She points out that psychiatric impairments are, by nature, not easily amenable to substantiation by objective testing. (ECF No. 27 at 1-2.) It is true that in the case of mental impairments, clinical or objective evidence may consist of the diagnoses and observations of psychiatric professionals. *See Thompson v. Colvin*, 2015 WL 470394, at *5 (C.D. Cal. Feb. 3, 2015). But this does not insulate psychiatric opinions from review. Here, the ALJ did not reject Dr. Weiss's opinion based upon an absence of objective clinical evidence. Rather, he accepted Dr. Weiss's diagnoses as well as his objective findings but ruled that those findings did not support Dr. Weiss's conclusion that Plaintiff was unable to perform any work.

Plaintiff also challenges the ALJ's reliance on N.P. Browning's opinion. It

---

[6] The ALJ provided additional reasons for rejecting Dr. Weiss's opinion, the validity of which the parties dispute. Because the Court finds the ALJ provided legally sufficient reasons discussed above, it need not discuss additional reasons for his decision.

13

appears that Plaintiff contends that the ALJ erred by failing to weigh N.P. Browning's opinion using the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6). (ECF No. 21 at 21-22.) However, that regulation applies only to medically acceptable sources, a category that does not include nurse practitioners. *See Molina*, 674 F.3d at 1111; *cf. Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) (a nurse practitioner could be considered a medically acceptable source where she worked under a physician's close supervision such that she acted as the physician's agent).

In addition, Plaintiff argues that the ALJ should have afforded more weight to Dr. Weiss because he is an examining clinical psychologist as opposed to a non-examining State agency physician or a nurse practitioner. (ECF No. 21 at 23.) The weight to which a medical opinion is entitled is a matter for the ALJ to decide. So long as he provided legally sufficient reasons for his determination of the weight of the evidence – which the ALJ did in Plaintiff's case – the Court may not substitute its own judgment. Furthermore, and contrary to Plaintiff's suggestion, the ALJ was entitled to rely upon the opinion of the State agency physician. *See generally Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record); 20 C.F.R. § 404.1527(c)(4) (the agency gives more weight to opinions that are consistent with the record as a whole).

Finally, Plaintiff discusses Ninth Circuit authority holding that an RFC limiting a claimant to simple, routine, repetitive work does not account for moderate limitations in concentration, persistence, or pace. (ECF No. 21 at 19-21.) Plaintiff points out that the ALJ afforded significant weight to the State agency physician's opinion that Plaintiff had moderate difficulties in concentration, persistence, and pace, and adopted that finding. (ECF No. 21 at 20-21, citing AR 24-25, 103.) It is not clear how these cases or assertions relate to Plaintiff's claim that the ALJ erred in rejecting Dr. Weiss's opinion. Assuming Plaintiff intended to raise an entirely

separate claim that the ALJ failed to incorporate all of Plaintiff's limitations into the RFC, her claim lacks merit.

In *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008), the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace when the assessment is consistent with restrictions identified in the medical testimony." Based on the fact that there was medical testimony − a second doctor's opinion, that the plaintiff had the ability to perform simple tasks − the Ninth Circuit found that the ALJ did not err in finding that the plaintiff had the RFC to perform simple, routine work. *Id*. at 1173-1175 ("The ALJ translated Stubbs-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him − Dr. Eather's recommended restriction to 'simple tasks.'"). An ALJ may sufficiently account for moderate difficulties in concentration, persistence, and pace by assessing an RFC restricting the claimant to simple, routine, repetitive tasks. *See Hughes v. Colvin*, 599 F. App'x 765, 766 (9th Cir. 2015); *Stubbs-Danielson*, 539 F.3d at 1171 (ALJ's limitation to "simple, routine, repetitive" work sufficiently accommodated physician's opinion evidence that claimant had "moderate" limitation in pace and "other mental limitations regarding attention, concentration, and adaption"); *Williams v. Colvin*, 2016 WL 7480245, at *7-8 (C.D. Cal. Dec. 29, 2016) (ALJ adequately accounted for medical opinion that plaintiff suffered moderate difficulties in concentration, persistence, and pace by assessing plaintiff with the mental RFC to perform "simple, repetitive tasks"). This is what the ALJ did here. Dr. Regets opined that Plaintiff was moderately limited in maintaining attention and concentration and was limited to performing simple tasks. (AR 107.) The ALJ adopted this opinion in full.

Plaintiff contends that *Stubb-Danielson* does not apply to her case (ECF No. 21 at 20), but she fails to explain why this is so. The Court notes that there is a line of cases holding that an ALJ errs by limiting a claimant to simple, repetitive, or

unskilled work after finding the claimant has moderate limitation in maintaining concentration, persistence, or pace. *See, e.g., Brink v. Comm'r of Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. Aug. 18, 2009); *John C. v. Berryhill,* 2018 WL 3388918, at *9 (C.D. Cal. July 9, 2018); *Alva v. Colvin*, 2016 WL 6561452, at *6 (C.D. Cal. Nov. 2, 2016). These cases are distinguishable, however, because here the ALJ relied upon a medical opinion that the claimant could perform simple, repetitive work. *Cf. Banks v. Colvin*, 2017 WL 113055, at *4 (C.D. Cal. Jan. 11, 2017) ("The ALJ did not rely on medical evidence in the record, including a medical source statement, establishing that Plaintiff was capable of unskilled work despite her moderate limitation in concentration, persistence, or pace. Therefore, the ALJ erred in failing to consider and include that limitation in determining Plaintiff's ability to engage in unskilled work.").

### 2. Whether Plaintiff could perform a significant number of jobs in the national economy.

At Step Five of the sequential process, the Commissioner bears the burden of showing that, given the claimant's RFC, she can engage in other substantial gainful work existing in significant numbers in the national economy. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). Where a claimant has significant non-exertional impairments, the ALJ appropriately relies upon the testimony of a VE to make such a determination. The VE must identify jobs in the national economy with physical and mental requirements that fall within the claimant's RFC. *Osenbrock*, 240 F.3d at 1162-1163.

In the present case, the ALJ proposed a hypothetical question including all of the limitations in Plaintiff's RFC. The VE testified that an individual with Plaintiff's age, education, work experience and RFC could perform the jobs of mail clerk (DOT 209.687-026) and officer helper (DOT 239.567-010). (AR 73-75.) The ALJ noted that the job of mail clerk had a reasoning level of 3, which is inconsistent with simple, routine, repetitive work. He concluded that Plaintiff could perform the job of office

helper, which has 148,000 jobs in the national economy. (AR 32.)

Plaintiff contends that the ALJ erred by finding she could perform the job of office helper because that occupation requires performance of "a variety of duties, often changing from one task to another of a different nature without loss of efficiency or composure." (ECF No. 21 at 24.)[7] According to Plaintiff, performing a variety of duties is inconsistent with her limitation to simple, routine, and repetitive tasks.

Plaintiff's argument has been rejected by other courts in this Circuit, which have found that the office helper position is compatible with a limitation to simple, repetitive tasks. *See Jerome M. H. v. Berryhill*, 2019 WL 994966, at *2 (C.D. Cal. Feb. 7, 2019); *Lewis v. Colvin*, 2016 WL 397626, at *5 (E.D. Cal. Feb. 2, 2016), *aff'd*, 708 F. App'x 919 (9th Cir. 2018); *Etter v. Astrue*, 2010 WL 4314415, at *4 (C.D. Cal. Oct. 22, 2010); *Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1136 (C.D. Cal. 2009). As those courts have noted, the tasks set forth in the job description involve simple, repetitive tasks. Specifically, the job of office helper is described as follows:

> Furnishes workers with clerical supplies. Opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail. Delivers oral or written messages. Collects and distributes paperwork, such as records or timecards, from one department to another. Marks, tabulates, and files articles and records. May use office equipment, such as envelope-sealing machine, letter opener, record shaver, stamping machine, and transcribing machine. May deliver items to other business establishments.

DOT 239.567-010.

---

[7] Plaintiff incorrectly attributes this quote to the Dictionary of Occupational Titles. It appears that the quote is from the Revised Handbook for Analyzing Jobs. *See Jerome M. H. v. Berryhill*, 2019 WL 994966, at *2 (C.D. Cal. Feb. 7, 2019) (citing Revised Handbook for Analyzing Jobs (1991), p. 10:2).

Nothing about a limitation to simple, repetitive tasks precludes the performance of a *variety* of such tasks. Thus, the VE's testimony that Plaintiff could perform as an office helper did not deviate from the DOT and did not conflict with Plaintiff's RFC. Accordingly, the ALJ was entitled to rely on the VE's testimony in finding that Plaintiff could perform work existing in significant numbers in the national economy.

## ORDER

For the foregoing reasons, IT IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 4/3/2019

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE